IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DALE MORRIS,                    *

    Plaintiff,              *

    v.                      *           CIVIL NO.: WDQ-11-2991

ERIC K. SHINSEKI, et al.,       *

    Defendants.             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Dale Morris sued Secretary of Veterans Affairs Eric K. Shinseki[1] and the U.S. Department of Veterans Affairs (the "VA") for employment discrimination, in violation of the Age Discrimination in Employment Act (the "ADEA").[2] For the following reasons, the Court will grant the Defendants' motion for summary judgment.

---

[1] The complaint misspelled Shinseki's first name. See ECF No. 1; ECF No. 12 at 1 n.1. The Court will direct the Clerk to correct the spelling on the docket.

[2] 29 U.S.C. §§ 621, et seq.

I. Background[3]

    Morris was born in 1958. ECF No. 12-3, Ex. 2 at 2. In March 2001, she began working for the VA. ECF No. 12-2, Ex. 1 at 4 (19:6-7). In April 2005, she became an Inventory Management Specialist at the Veterans Administration Medical Center at Perry Point, Maryland. ECF No. 12-7, Ex. 6 at 12-13; ECF No. 12-11, Ex. 2 at 3 (Hawkins[4] Decl.). Morris spends about half her time doing data entry, and has helped implement the Generic Inventory Package (the "GIP"), a database at her facility.[5]

    On March 25, 2009, Morris applied to become a General Supply Specialist (the "Position"). ECF No. 12-11, Ex. 2 at 2.

---

[3] Although Shinseki and the VA (collectively, the "Defendants") have moved to dismiss or for summary judgment, the Defendants' argument relies only on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 9-14. *McDonnell Douglas* establishes a method of proving--not pleading--intentional age discrimination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004). Thus, the Court will treat the Defendants' motion as one for summary judgment. Morris's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] As discussed below, "Hawkins" is Sterling Hawkins, Chief of Acquisitions and Material Management in the VA Maryland Health Care System. ECF No. 12-9 at 1. His name is included here to identify the document to which this exhibit is attached.

[5] ECF No. 12-2, Ex. 1 at 4, 5 (20:5-8; 56:11-14); ECF No. 12-11, Ex. 2 at 5. In Morris's words, her daily duties consist of "managing, editing, and monitoring activities for the [GIP] and processing orders for supplies and services." ECF No. 12-11, Ex. 2 at 2.

The Position required knowledge of "inventory management principles, procedures, and concepts"; "assist[ing] Chiefs as liaison with customers to ensure that all concerns are identified"; and "continuous personal contacts" with professional and nonprofessional staff. ECF No. 12-10, Ex. 1 at 2, 4-5 (Hawkins Decl.). Unlike the Inventory Management Specialist job, the Position required management of medical (as opposed to construction) commodities. ECF No. 12-2, Ex. 1 at 9 (109:13-17).

In her application, Morris noted that she had 28 years of supply and logistics experience. ECF No. 12-11, Ex. 2 at 5. Her application contained many grammatical errors. For instance, Morris wrote that:

- her knowledge "would be to monitors the budget set-fore by the Agency and fiscal service";
- "I gain my knowledge of inventory management policies and procedures about twenty eight years, while in training for my Military occupational specialize training course . . . ."; and
- "Throughout the development and implementing phrase over 5 thousand lines items had to assigned item master number and then load into the GIP database."

ECF No. 12-11, Ex. 2 at 5-6.

3

Six other candidates applied for the Position. ECF No. 12-2, Ex. 1 at 11 (177:9-13). Morris was the only internal candidate; the other qualified applicants were not current employees of the Veterans Administration Medical Health Care System. ECF No. 12-16, Ex. 7 at 2 (Hawkins Decl.); see ECF No. 12-2, Ex. 1 at 7 (65:4-9; 66:3-5).

Because Morris was a member of the American Federation of Government Employees, her application was subject to that union's Collective Bargaining Agreement (the "CBA"). ECF No. 12-18 at 1. The CBA provided that, in considering vacancy appointments, "first and full consideration" had to be given to "any best qualified [internal] candidates." ECF No. 13, Ex. 1 at 8 (Plank[6] Decl.). The CBA did not define "first and full consideration." VA staff interpreted it to require that each candidate be given "the same consideration"[7] and testified that, if all candidates were equally qualified, the internal candidate would be hired.[8]

Upon reviewing Morris's application, the VA's Human Resource office found that she was qualified for the Position.

---

[6] "Plank" is Emily Plank, Supervisory Human Resource Specialist in Labor/Employee Relations at the VA. ECF No. 12-18 at 1. Her name is included here to identify the document to which this exhibit is attached.

[7] ECF No. 12-2, Ex. 1 at 7 (67:5-10).

[8] Id. at 13 (230:6-8).

4

*See id.* at 9 (110:11-18). Morris was interviewed by Sterling Hawkins, Chief of Acquisitions and Material Management.[9] Hawkins was looking for a candidate with knowledge of new inventory management strategies, such as just-in-time inventory supply and "Six Sigma."[10] Because the Position "ha[d] a lot of customer service activity," use of proper grammar was a "key" factor in his decisionmaking.[11] During Morris's interview, Hawkins gave her a negative mark for "extensive" misuse of plurals.[12] Hawkins described the interview as "good." ECF No. 12-2, Ex. 1 at 8 (107:4-6). The parties agree that, after the interview, Hawkins

---

[9] ECF No. 12-3, Ex. 2 at 2; ECF No. 12-9 at 1. From 2008 to 2009, Hawkins hired 15 persons. ECF No. 12-17, Ex. 8 at 2 (Hawkins Decl.). Twelve of them were more than 40 years old. *Id.*

[10] ECF No. 12-2, Ex. 1 at 10 (128:10-20). "Just-in-time inventory supply" refers to a system in which goods are manufactured and shipped only shortly before they are actually required by the customer. *Aleris Aluminum Can., L.P. v. Behr Am., Inc.*, No. 09-CV-10734-DT, 2009 WL 2351762, at *1 (E.D. Mich. July 28, 2009). Hawkins testified that "Six Sigma" is a "continuous quality improvement program," which "anticipates the use of rigorous metrics in the evaluation of goal achievement." *See* ECF No. 12-7, Ex. 6 at 16.

[11] ECF No. 12-2, Ex. 1 at 16 (245:6-13). Hawkins testified that, in some cases, he gave the same weight to a candidate's interview performance as to her experience. *Id.* at 10 (188:14-20).

[12] *Id.* at 13-14 (231:14-21; 232:12-16; 233:4-5). Hawkins also thought that Morris's response deserved a negative mark because she mentioned implementing the GIP as a significant accomplishment – a task that Hawkins could have accomplished in about 30 minutes. *Id.* at 14 (234:6-13).

told Morris she was the "top" candidate for the job. Compl. ¶ 14; Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 6.

On April 17, 2009, Hawkins hired Crystal Southall-Norman, a logistics specialist[13] who was born in 1975.[14] Southall-Norman's application also contained grammatical errors. For example, her résumé noted that she had "inventoried and disburse fuel plates,"[15] that she "research on over 160 requisitions,"[16] and that she directly supervised "4 accounting clerks daily operations."[17]

Southall-Norman did not receive any negative marks during her interview. ECF No. 12-15, Ex. 6 at 2-3 (Hawkins Decl.). Hawkins found that Southall-Norman's

> written and oral presentations were better than any other candidate with respect to depth, clarity, and completeness. She documented her work experience in her application and answered her interview questions with great detail. [Her] work experience and interview responses suggest familiarity and experience with the new inventory management strategies we recently implemented in the service . . . .

---

[13] Southall-Norman had provided inventory and supplies for naval aircraft. See ECF No. 12-12, Ex. 3 at 2, 5 (Hawkins Decl.).

[14] ECF No. 12-7, Ex. 6 at 13; ECF No. 12-9 at 2. Hawkins testified that he did not know or consider Southall-Norman's age when he hired her. ECF No. 12-2, Ex. 1 at 12 (186:16-187:4).

[15] ECF No. 12-12, Ex. 3 at 2.

[16] Id. at 3.

[17] Id.

ECF No. 12-2, Ex. 1 at 10 (127:19-128:9).

Morris alleged age discrimination by the VA and, on May 5, 2009, sought Equal Employment Opportunity ("EEO") counseling.[18] On July 24, 2009, she filed a discrimination complaint with the VA. Id.; ECF No. 12-4, Ex. 3 at 2. On December 8, 2009, the VA sent Morris a notice of her right to an immediate Final Agency Decision or a hearing by the U.S. Equal Employment Opportunity Commission (the "EEOC"). ECF No. 12-6, Ex. 5 at 2.

Morris requested a hearing, which was held on May 19, 2011 before Administrative Judge David Norken. See generally ECF No. 12-2, Ex. 1 at 3. On June 1, 2011, Judge Norken issued a bench decision in favor of the VA. ECF No. 12-7, Ex. 6 at 6, 38.

Judge Norken applied the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Id. at 8. Although finding a prima facie case of age discrimination, id. at 34, Judge Norken held that Morris had failed to prove by a preponderance of the evidence that Hawkins's proffered reason for Morris's nonselection was not the true reason, and that the true reason was discrimination. Id. at 35.

On July 19, 2011, the VA sent Morris its final decision, accepting Judge Norken's conclusions, and notified Morris of her

---

[18] ECF No. 12-3, Ex. 2 at 2. The parties have not submitted additional details about Morris's EEO counseling. See id.

right to appeal or file a civil action. ECF No. 12-8, Ex. 7 at 3.

On October 19, 2011, Morris sued, alleging age discrimination in violation of the ADEA. ECF No. 1. On April 4, 2012, the Defendants moved to dismiss or for summary judgment. ECF No. 12. On May 23, 2012, Morris opposed the motion. ECF No. 18. On June 5, 2012, the Defendants filed a reply. ECF No. 20.

## II. Analysis

### A. Standard of Review

A court must grant summary judgment if the record shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).[19] In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable

---

[19] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must also abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit." *Id.* "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks omitted).

B. The Defendants' Motion for Summary Judgment

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of [her] age." 29 U.S.C. § 623(a). To succeed on an ADEA claim, the plaintiff must be at least 40 years old and "'prove, by a

preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision.'"[20]

The plaintiff can prove her employer's discrimination through one of two methods.[21] First, the plaintiff may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted). To avoid summary judgment, the plaintiff must produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."[22] Because Morris has not presented direct evidence of discrimination, the Court must apply the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[23]

---

[20] 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

[21] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

[22] *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (internal quotation marks omitted).

[23] Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). The plaintiff must establish that: "(1) plaintiff was protected by the ADEA; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Phair v. Montgomery*

The Defendants argue that Morris has not rebutted their nondiscriminatory reasons for selecting another qualified candidate. Defs.' Mot. to Dismiss or for Summ. J. ¶ 2. Morris argues that her qualifications and the Defendants' failure to promote her give rise to an inference of unlawful age discrimination. Compl. ¶¶ 5-25. She contends that she has shown pretext, and the Defendants' motion is premature. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 4-5.

1. Whether the Defendants' Motion Is Premature

Morris argues that "it would be improper for the Court to force [her] to prove her case at this early point in the proceedings." *Id.*

Although further discovery may be helpful to Morris, she has not filed a Rule 56(d) affidavit. *See* Fed. R. Civ. P.

---

*Cnty. Pub. Sch.*, 3 F. Supp. 2d 644, 647 (D. Md. 1997) (citing *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir. 1994)). If she does, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a nondiscriminatory reason for its adverse decision. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981), and the *McDonnell Douglas* framework "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff must then prove by a preponderance of the evidence that "the proffered reason was not the true reason for the employment decision," and that the true reason was discrimination. *Burdine*, 450 U.S. at 256. She may do this directly or indirectly, by "persuading the court that a discriminatory reason more likely motivated the employer" or by showing that the employer's explanation is "unworthy of credence." *Id.*

56(d). This affidavit "ensure[s] that the nonmoving party is invoking the protections of Rule 56[d] in good faith and . . . afford[s] the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd.*, 302 F.3d at 244 (internal quotation marks omitted). A party "cannot withstand a motion for summary judgment by merely asserting in [her] brief that discovery was necessary." *Nader*, 549 F.3d at 961. Morris has not shown that the Defendants' motion is premature.

    2. The Merits of the Defendants' Motion

    There is no dispute that Morris has presented a prima facie case of age discrimination under the ADEA. Morris was more than 40 years old at all relevant times;[24] she applied and was qualified for the Position;[25] and one can reasonably infer unlawful discrimination from the Defendants' selection of a substantially younger candidate.[26] *See Phair*, 3 F. Supp. 2d at 647 (*citing Carter*, 33 F.3d at 458). To rebut this inference, the Defendants must articulate a nondiscriminatory reason for not selecting Morris. *See Hoyle*, 650 F.3d at 336.

---

[24] ECF No. 12-3, Ex. 2 at 2.

[25] ECF No. 12-11, Ex. 2 at 2; ECF No. 12-2, Ex. 1 at 9 (110:11-18).

[26] Morris was born in 1958; Southall-Norman was born in 1975. ECF No. 12-3, Ex. 2 at 2; ECF No. 12-7, Ex. 6 at 13.

### a. Legitimate Nondiscriminatory Reasons

The Defendants argue that Southall-Norman's written application was more detailed than Morris's, that Southall-Norman indicated familiarity with just-in-time inventory supply, and that Southall-Norman's interview performance was superior to Morris's. Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 11. Morris counters that she had more years of experience than Southall-Norman, and the Defendants did not give her the preference in selection to which she was entitled under the CBA. Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 5. Morris also argues that she has proven pretext, because the Defendants considered her grammatical skills and experience with medical supply and equipment even though the Position description did not refer to such skills or experience. *Id.* at 6, 8.

Hawkins's testimony about the Position requirements and the character of Morris's and Southall-Norman's respective applications establishes nondiscriminatory reasons for not hiring Morris. The Position required knowledge of "inventory management principles, procedures, and concepts," and "continuous personal contacts" with professional and nonprofessional staff. ECF No. 12-10, Ex. 1 at 4, 5.

Hawkins testified that Southall-Norman's work experience and interview responses showed familiarity with relevant "inventory management strategies" such as just-in-time inventory

supply and "Six Sigma." ECF No. 12-2, Ex. 1 at 10 (128:12-20). Morris's did not. *See* ECF No. 12-7, Ex. 6 at 20. Further, Southall-Norman's written and oral presentations were "better than any other candidate with respect to depth, clarity, and completeness." *See* ECF No. 12-2, Ex. 1 at 10 (127:19-128:2, 4-9). By contrast, Hawkins testified that Morris's application was less detailed than Southall-Norman's and contained significant grammatical errors. ECF No. 12-7, Ex. 6 at 29, 32. Hawkins also gave Morris a negative mark for "extensive" misuse of plurals during the interview and for offering as a significant accomplishment a task that Hawkins could have completed in 30 minutes. ECF No. 12-2, Ex. 1 at 14 (233:2-5; 234:6-13).

 b. Pretext

 Because the Defendants have presented legitimate, nondiscriminatory reasons for their actions, Morris must show by a preponderance of the evidence that the Defendants' proffered reasons were a pretext, and the "true" reason she was not promoted was age discrimination. *Burdine*, 450 U.S. at 256. To survive summary judgment, she must present material evidence that raises a triable issue as to pretext. *Douglas v. PHH*

*FleetAmerica Corp.*, 832 F. Supp. 1002, 1010 (D. Md. 1993). Morris has not carried this burden.[27]

Morris argues that she had more experience than Southall-Norman. Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 5. But, "[t]he self-perception of a plaintiff in an ADEA . . . suit as to his or her other qualifications is irrelevant; what matters is 'the perception of the decision-maker.'"[28] As discussed above, the Defendants produced ample evidence that Hawkins correctly considered factors other than years of experience, such as knowledge of management strategies and quality of interview performance. *See, e.g.*, ECF No. 12-2, Ex. 1 at 10 (127:19-128:9). Morris's longer work history than Southall-Norman is insufficient to establish discriminatory motive.

Morris argues that the Defendants failed to give her a preference in selection, as required by the CBA. Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 5-6. VA Human Resource Specialist John Copper[29] testified that the relevant provision

---

[27] *See Mandengue v. ADT Sec. Sys., Inc.*, No. ELH-09-3103, 2012 WL 892621, at *16 (D. Md. Mar. 14, 2012) (*quoting Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

[28] *Douglas*, 832 F. Supp. at 1010 (*quoting Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

[29] John Copper is identified by name and title in the Defendants' motion, but not in the relevant testimony submitted as an

(stating that internal candidates shall receive "first and full consideration"[30]) requires only that each candidate be given equal consideration. ECF No. 12-2, Ex. 1 at 7 (67:5-10). Hawkins asserted compliance with this interpretation by testifying that "if the candidates were equally qualified, I would have selected [Morris]." Id. at 13 (230:6-8). The CBA does not define "first and full consideration," and Morris offers no evidence that the Defendants' interpretation of the CBA provision is incorrect.[31] That the Defendants did not select Morris, the only internal candidate, is insufficient to prove discrimination.

Morris also argues that Hawkins should not have considered her grammatical errors because the Position description did not require "grammatical skills," and emphasizes that Southall-Norman also made grammatical errors in her application. Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 5-6. Neither argument is persuasive. Given the extensive customer service

---

exhibit by the Defendants. Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 4.

[30] ECF No. 13, Ex. 1 at 8.

[31] Morris merely argues, without elaboration, that the Defendants' interpretation is "illogical and is directly contradicted by the relevant CBA provisions." Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 6.

required by the Position,[32] it is likely that the Position required good writing and speaking skills. Further, grammar was not the sole basis for the Defendants' hiring decision. As discussed above, Hawkins hired Southall-Norman for a variety of reasons, such as her detailed responses and familiarity with just-in-time principles.[33]

Finally, Morris argues that Hawkins's positive feedback after her interview "directly contradict[s] the Agency's suggestion that Mr. Hawkins was not impressed by Ms. Morris" and is evidence of discrimination. Pl.'s Opp'n to Defs.' Mot. to Dismiss or for Summ. J. 9. The parties agree that, after Hawkins interviewed Morris, Hawkins told Morris he considered her to be the "top" candidate for the Position. Compl. ¶ 14; Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 6. However, Hawkins also told Morris that he had more candidates to interview.[34] That Hawkins hired Southall-Norman, whom he interviewed after Morris and found to be better qualified, does not establish discrimination.

---

[32] See ECF No. 12-10, Ex. 1 at 2, 4-5.

[33] See, e.g., ECF No. 12-2, Ex. 1 at 10 (127:19-128:9). Morris's argument that Hawkins should not have considered her medical supply and equipment experience is not proof of discrimination. Even assuming that the Position did not require medical supply and equipment experience, the Defendants' reliance on other legitimate factors precludes a finding of discrimination.

[34] ECF No. 12-2, Ex. 1 at 116:19-117:3; Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. 6.

III. Conclusion

For the reasons stated above, the Court will grant the Defendants' motion for summary judgment.

__8/22/12__
Date

_____
William D. Quarles, Jr.
United States District Judge